## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JARED AUSTIN TWOMEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 7:18-cv-01653-TMP |
| | ) | |
| TUSCALOOSA COUNTY[1]; | ) | |
| SHERIFF RON ABERNATHY, | ) | |
| Individually; OFFICER TYLER WAID, | ) | |
| Individually; CITY OF TUSCALOOSA, | ) | |
| ALABAMA; OFFICER B.E.MARTIN, | ) | |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This case is before the court on motions to dismissed filed by defendants Sheriff Ron Abernathy ("Abernathy"), the City of Tuscaloosa ("City"), and Officer B.E. Martin ("Martin").  Filed February 28, 2019, Abernathy seeks dismissal of all the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 12(b)(1).  (Doc. 42).  Martin and the City allege that all of Plaintiff Jared Austin Twomey's ("Plaintiff" or "Twomey") claims against them arising from his arrest and detention on October 23, 2016, are due to be dismissed on multiple grounds.  (Doc. 43).  The parties have consented to the exercise of jurisdiction by

---

[1]   The defendant identified as "Tuscaloosa County" was not included in the Second Amended Complaint, and thus was dropped or dismissed by operation of the filing of the amended complaint, which supplanted earlier pleadings.

the undersigned magistrate pursuant to 28 U.S.C. § 636(c) (doc. 22); accordingly, the court enters this memorandum opinion.

**Standard of Review**

On a motion to dismiss, the court must accept as true all of the facts alleged in the complaint. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949-51, 173 L. Ed. 2d 868 (2009). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," <u>Roe v. Aware Woman Center For Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise detail the specific facts upon which he bases his claim. The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Id.</u> (quoting <u>In re Plywood Antitrust Litigation</u>, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

The Supreme Court clarified the threshold for a sufficient pleading in <u>Bell Atlantic Corp. v. Twombly</u>. 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007) (rejecting the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to withstand a motion to dismiss). To show that "the pleader is entitled to relief,"

under Rule 8(a)(2), the complaint must allege facts that "plausibly" demonstrate a viable cause of action. The threshold of plausibility is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). To withstand scrutiny under Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that will thus "nudge [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The Eleventh Circuit Court of Appeals has explained that the principles set forth in Twombly and Iqbal require the complaint to set forth sufficient facts that "raise a right to relief above the speculative level." Speaker v. U.S. Dep't of Health and Human Servs. Centers for Disease Control and Prevention, 623 F.3d 1371, 1380 (11th Cir. 2010).

**Procedural History**

The plaintiff commenced this action on October 9, 2018. Since then he has amended his complaint twice. The operative complaint for the purpose of the instant motions to dismiss is his second amended complaint filed on February 8, 2019, against Sheriff Ron Abernathy, in his individual capacity, County Officer Tyler Waid ("Waid"), in his individual capacity, City of Tuscaloosa, Alabama, a

municipal corporation, and City Officer B.E. Martin, in his individual capacity. (Doc. 39). Twomey's claims arise from alleged excessive force by Waid that occurred during or around the time of his processing into Tuscaloosa County Jail after he had been arrested for public intoxication by Martin. (Doc. 39). Twomey was arrested by Martin on October 23, 2016, for public intoxication. He was then transported to the Tuscaloosa County jail for processing, where he was handed off to Waid. Twomey claims that Waid shoved his head into a wall without provocation. Twomey was transported to the hospital, where he was treated for a concussion and a laceration, but he alleges his health issues persisted for some time.

The Second Amended Complaint asserts claims of excessive force under 42 U.S.C. § 1983 and § 1985 and Alabama state law against all defendants, assault and battery against defendant Waid, negligence and/or wantonness against all defendants, negligent hiring, training, and supervision under a theory of Monell liability against defendant Abernathy and the City of Tuscaloosa, inadequate policy under a theory of Monell liability against defendant Abernathy and the City, and civil conspiracy. The complaint does not state which defendants the plaintiff alleges participated in the civil conspiracy, but the court construes that claim to be asserted against defendants Waid and Martin. The City and Martin filed the joint motion to dismiss on March 1, 2019. (Doc. 43).

**Claims Against Sheriff Ron Abernathy**

Twomey alleges that defendant Ron Abernathy acted under color of state law to deprive him of his constitutional rights by way of excessive force (Count One), negligence and/or wantonness (Count Three), negligent hiring, training, and supervision (Count Four), inadequate policy (Count Five), and civil conspiracy (Count Six).[2] Abernathy filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), contending that Twomey has failed to state a claim as to Count One. (Doc. 42, p. 1) and that Count Five should be dismissed because plaintiff's "conclusory allegations are insufficient to support a cause of action for inadequate policy." (Doc 42, p. 4). Finally, Sheriff Abernathy argues this court lacks subject-matter jurisdiction to consider Counts Three, Four, and Six. (Doc. 42, p. 3). The court will examine the arguments in turn.

*I. Count One—Excessive Force*

In light of the complaint, Count One asserts a plausible claim for excessive force pursuant to 42 U.S.C. § 1983. Supervisors, such as sheriffs, may be liable "only if they personally participated in the allegedly unconstitutional conduct or if there is 'a causal connection between [their] actions . . . and the alleged constitutional violation.'" <u>West v. Tillman</u>, 496 F.3d 1321, 1328 (11th Cir. 2007). A causal connection is established three ways: 1) "a history of widespread abuse

---

[2] Count Two asserts a state law claim for assault and battery against defendant Waid only.

puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," 2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights," or 3) where "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Harper v. Lawrence Cty. Ala., 592 F.3d 1227, 1236 (11th Cir. 2010).

With respect to Count One Twomey alleges that Abernathy "permitted, encouraged, and ratified a pattern and practice" of excessive force by failing to discipline or prosecute incidents of excessive force; failing to investigate incidents of excessive force; and actively participating in covering up prior excessive force incidents involving Officer Waid and others.[3] (Doc. 39, ¶ 42). While the reference to a "pattern and practice" is a legal conclusion, the remaining portions of the allegation are factual in nature. They allege that Abernathy "failed to discipline or prosecute" Waid and other (unnamed) jailors for "known incidents" of excessive force; "refused to investigate complaints of excessive force" by Waid and other (unnamed) jailors; and "actively participated in covering up prior acts of Waid and other (unnamed) jailors" by which arrestees were deprived of the right "to be free

---

[3]  Fed. R. Civ. P. 11(b) provides that [b]y presenting to the court a pleading… an attorney… certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…" the factual contentions in the pleading "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…."  Based on this requirement, the court assumes plaintiff has, or reasonably believes he will have, actual evidentiary support for these factual allegations.

from excessive force."[4] This allegation, if proven by the evidence, would tend to establish the required "causal connection" under <u>Harper</u>. <u>See Harper</u>, 592 F.3d at 1236. He has alleged that, at the time of his arrest, Sheriff Abernathy knew of prior instances when Waid and other unnamed officers used unnecessary force against arrestees, yet Abernathy failed or refused to investigate these instances or to discipline or prosecute Waid and the other officers engaged in misconduct. More so, he alleges that Abernathy actively assisted such officers in covering up instances of unnecessary force, thus encouraging them to continue to do so. Because the court is required to accept the factual allegations as true when evaluating a motion to dismiss, the allegations contained in the complaint, *if proven*, could plausibly result in Twomey obtaining a favorable legal outcome. <u>See</u> <u>American Dental Assoc.</u>, 605 F.3d at 1290. Accordingly, the court finds that Twomey has nudged his claim over the line from conceivable to plausible. <u>Twombly</u>, 555 U.S. at 570. Sheriff Abernathy's motion to dismiss as to Count One is due to be denied.

*II. Count Five: Inadequate Policy*

Sheriff Abernathy argues that Count Five should be dismissed because Twomey fails to sufficiently plead a claim for inadequate policy. (Doc. 42, p. 4).

---

[4] The court acknowledges that the phrase "excessive force" also is a legal conclusion, although it strongly implies a factual assertion as well. The simple words themselves convey the factual allegation that more force than necessary under the circumstances was used. Short of requiring the plaintiff to describe the factual detail of each and every prior instance of force used on multiple arrestees, the shorthand reference to "excessive force" is a sufficient factual allegation.

Sheriffs may be held liable "due to the existence of an improper policy or [for] the absence of a policy," which is the cause of violations of constitutional rights. Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991). Liability also is possible where "the custom or policy established result[s] in deliberate indifference to constitutional rights." Id. Where untrained employees are concerned, it is "'ordinarily necessary' to demonstrate deliberate indifference." Connick v. Thompson, 563 U.S. 51, 62 (2011). "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish . . . the 'deliberate indifference'" required for liability. Id. Plaintiffs ordinarily need to show a pattern of similar constitutional violations to demonstrate the deliberate indifference of the supervisor. See id. A single incident is usually not sufficient to impose liability. See Craig v. Floyd County, Ga., 643 F.3d 1306, 1310 (11th Cir. 2011).

In a case involving alleged deliberate indifference by a Sheriff's Office in Florida, the court of appeals wrote:

> "[O]nly deprivations undertaken pursuant to governmental custom or policy may lead to the imposition of governmental liability." And "an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). Custom can also take the form of a "policy of inaction" when the municipality has notice that failing to discipline misconduct will

cause constitutional violations, but that inaction must be "the functional equivalent of a decision by the [municipality] itself to violate the Constitution." Connick v. Thompson, 563 U.S. 51, 61–62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (quotation marks omitted). To establish the Sheriff's Office's liability, the plaintiffs must show that it acted with deliberate indifference, which is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 61, 131 S.Ct. at 1360 (quotation marks omitted).

Pellegrino v. Wengert, 703 F. App'x 892, 895 (11th Cir. 2017) (internal citations omitted).

To the extent that Twomey's complaint alleges that Sheriff Abernathy failed to establish adequate policies regarding the use of force in the jail, Twomey has alleged sufficient facts to satisfy Rule 8(a)(2). Although it is true that Twomey has not described the facts detailing the known prior instances of excessive force by Waid and others, he has alleged that, on multiple occasions, sheriff's deputies have engaged in excessive force (because they are hired without police academy training) and that, not only was Abernathy aware of these instances, he deliberately failed to take corrective action and, indeed, actively participates in covering them up. Specifically, Twomey alleges that the Abernathy permitted, encouraged, and ratified a pattern or practice of unjustified force against inmates *known* to him to be occurring. (Doc. 39, ¶ 83). Twomey also alleges that the Sheriff *actively* participated in a cover-up and failed to discipline his officers. (Doc. 39, ¶ 83). While Abernathy's failure to train jailors to the same level as deputy officers does

not lead to a plausible inference of deliberate indifference, Twomey's allegations of a pattern or practice of "permitting, encouraging, and ratifying" known instances of excessive force meets the requirement that the municipal officer "disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). In sum, at least for Rule 8(a) purposes, Twomey has sufficiently pleaded facts that meet the plausibility standard. Sheriff Abernathy's motion to dismiss as to Count Five is due to be denied.

   *III. Counts Three, Four, and Six: State-Law Claims.*

   Sheriff Abernathy argues that Counts Three, Four, and Six are by nature state-law claims and Alabama Sheriffs are absolutely immune from suits for damages based on state law. (Doc. 42, p. 3-4 (citing *Ala. Const. of 1901*, Art. V, § 112)).

### A.  Count Three: Negligence

   Twomey concedes that plaintiff's claim of negligence is a state law claim and, therefore, is barred by absolute immunity. (Doc. 46, p. 4). Accordingly, defendant's motion to dismiss as to Count Three is due to be granted.

### B.  Count Four: Negligent Hiring Training and Supervision

   Sheriff Abernathy's only argument for the dismissal of Count Four is that Twomey alleges a state law claim barred by absolute sovereign immunity.

(Doc. 42, p. 3). To that end his motion is due to be denied because Twomey alleges Count Four as a federal claim under 42 U.S.C. § 1983. (Doc. 39, ¶ 70, 79). Paragraph 70 of the second amended complaint plainly alleges that Count Four alleges that Abernathy's failure to adequately hire, train, and supervise his employees resulted in the use of excessive force "in violation of the Fourteenth Amendment to the United States Constitution…." (Doc. 39, ¶ 70). Under § 1983, a Sheriff may be liable for hiring, training, or supervision where the omission amounts to deliberate indifference to the rights of prisoners with whom the sheriff's officers come into contact. Keith v. Dekalb County, 749 F.3d 1034, 1052 (11th Cir. 2014). "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission . . . causes [his or her] employees to violate citizens' constitutional rights,' and that . . . the supervisor chose to retain that training program." Id. Here, Twomey has alleged that Abernathy is aware that Waid and others have violated the constitutional rights of arrestees not to be subjected to excessive force on multiple occasions and that Abernathy continues to retain his same training (or non-training) program. This plausibly alleges a constitutional claim for failure to hire or train against Abernathy.

Count Four, being a federal-law claim, is not barred by the absolute immunity provided by Section 14 of the Alabama Constitution. While not in the

heading to Count Four, Twomey alleges a violation of Fourteenth Amendment rights and demands relief in the form of "costs, interests and reasonable attorney's fees as provided under § 1983." (Doc. 39, ¶ 79). Because a § 1983 federal cause of action exists for negligent hiring, training, or firing and Abernathy's motion to dismiss raises only the single argument that Count Four is barred by state-law sovereign immunity, the court finds that the motion to dismiss Count Four is due to be denied.

## C. Count Six: Civil Conspiracy

Sheriff Abernathy's assertion that absolute immunity bars the claim of civil conspiracy misses the mark because Twomey pleads a federal claim under § 1985, not a state-law civil conspiracy. However, the motion to dismiss is still due to be granted because the Second Amended Complaint fails to state a claim against Abernathy. The court has a responsibility to dismiss *sua sponte* a plaintiff's claim where the complaint is filled with conclusory allegations that do not support an inference that the defendant violated the plaintiff's constitutional rights. Colburn v. Odom, 911 F.3d 1110, 1120 (11th Cir. 2018).

To plead a conspiracy under Section 1985 brought pursuant to Section 1983 a plaintiff must show that the defendants denied him a constitutional right and that the defendants agreed to deny the plaintiff's rights. Hadley v. Gutierrez, 526 F.3d 1324, 1332-3 (11th Cir. 2008). The allegations of the complaint state that:

86. Officer Martin and Officer Waid acting in concert conspired to suppress the unwarranted and unlawful conduct of the Defendant Officers by falsifying the police report and proffering same to be used in a judicial tribunal. Said conspiracy was entered into with the specific interest to cover up the violation of the Plaintiff's civil rights in violation of the rights secured by Article IV's Privileges and Immunities Clause, First Amendment, Fifth Amendment, and Fourteenth Amendment.

87. This was not the first time Waid and other jailors have been involved in an excessive force incident resulting in injuries of an inmate, and the City and Ron Abernathy has a custom, practice and policy to hire citizens who have not graduated from the academy who have not been training in excessive force or the handling of intoxicated individuals, to be jailor, failed to discipline Waid thus encouraging further conduct, then took affirmative steps to cover up the violation of Twomey's and other's constitutional rights.

(Doc. 39). The factual allegations in the complaint refer to the conduct of Waid and Martin *conspiring to cover up* the alleged incident. This fails to plead the existence of a conspiracy to inflict excessive force on the plaintiff, pleading only that they conspired afterward to cover up the constitutional violation. However, pleading a claim of civil conspiracy requires first pleading a constitutional violation. The Eleventh Circuit has addressed this issue in detail in <u>Hadley</u>. 526 F.3d at 1332-3. Here, plaintiff has offered essentially a shotgun-pleading style list

of possible rights that may have been violated.[5]   This type of broad sweeping

assertion was rejected in <u>Hadley</u>.  There the court explained:

> [Plaintiff] has the burden to show an actual denial of his constitutional
> rights underlying the cover-up conspiracy.  It is not our job to divine a
> constitutional violation to support Hadley's conspiracy claim. We are
> left completely in the dark about the constitutional basis for the claim.
> His complaint contains no explanation of which rights protected by
> the Fourteenth Amendment were infringed.

<u>Hadley</u>, 526 F.3d at 1332; <u>see also</u> <u>Weiland v. Palm Beach County Sheriff's Office</u>,

792 F.3d 1313, 1327 (11th Cir. 2015) ("To state a claim for conspiracy under

§ 1983, a plaintiff must allege that (1) the defendants reached an understanding or

agreement that they would deny the plaintiff one of his constitutional rights; and

(2) the conspiracy resulted in an actual denial of one of his constitutional rights.").

The same is true in this case.  The plaintiff fails to identify the constitutional right

the alleged conspiracy was intended to violate.

However, even more lethal to the plaintiff's conspiracy claim is his complete

failure to plead *facts* that create a plausible inference that each defendant agreed to

participate in a conspiracy to deprive the plaintiff of that constitutional right.  Here

the complaint does not even contain a naked assertion that defendant Abernathy

reached any sort of agreement with Waid and Martin to deprive the plaintiff of his

---

[5] The differences in the type-face of the document indicate that portions of this claim were
simply copied and pasted from another document.

rights. To state a claim, the plaintiff must plead facts, not mere legal conclusions, from which it can be plausibly inferred that Waid and others reached a "meeting of the minds" necessary to the formation of a conspiracy. Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) ("[T]he plaintiff must prove that the defendants reached an understanding to deny the plaintiff's rights.") (citing Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.1990)). No such facts have been alleged here to allow the court to infer a conspiratorial agreement was reached between Abernathy and other defendants. At most, ¶ 87 alleges only that Abernathy had a "custom and practice" of hiring untrained jailers, not that he reached a conspiratorial agreement with Waid to deprive the plaintiff of some unspecified right. Accordingly, Abernathy's motion to dismiss plaintiff's claims of civil conspiracy is due to be granted.

**Claims against Officer Martin and the City of Tuscaloosa**

Police Officer B.E. Martin ("Martin") and the City of Tuscaloosa also have filed a motion to dismiss the claims against them in Second Amended Complaint. (Doc. 43). Martin and the City allege that all of Plaintiff Jared Austin Twomey's ("Plaintiff" or "Twomey") claims against them arising from his arrest and detention on October 23, 2016, are due to be dismissed.

*IV.  Section 1983- Excessive Force/ Section 1985- Civil Conspiracy*

  A.  <u>Officer Martin</u>

  Martin has argued that the complaint fails to allege sufficient facts to create a plausible inference of liability under <u>Twombly/Iqbal</u>.  In his response brief, Plaintiff clarifies that he is asserting two claims under 42 U.S.C. § 1983, both that the defendant is liable for the excessive force because he (1) failed to intervene and (2) falsified a police report to cover-up the excessive force.  In a reply brief, Martin argued that plaintiff had not stated a claim under either allegation because he was unable to intervene to stop any alleged excessive force and because Plaintiff failed to state a causal connection between any alleged falsified report and the damages from any alleged excessive force.

  An officer may be liable for the excessive force of another if he or she fails to intervene to stop or prevent the constitutional violation.  <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000).  However, an officer's failure to intervene results in liability only when the officer had the ability to intervene and chose not to do so.  <u>Id.</u> (citing <u>Riley v. Newton</u>, 94 F.3d 632, 635 (11th Cir.1996); <u>Byrd v. Clark</u>, 783 F.2d 1002, 1007 (11th Cir.1986); <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1441–42 (11th Cir.1985)).  This standard requires a plaintiff to present facts showing that the officer "failed to take reasonable steps to protect [the plaintiff] from excessive force."  <u>Riley</u>, 94 F.3d at

635.  The standard is not met where an officer did not have a real opportunity to intervene, such as when the officer was attempting to restrain another arrestee when the excessive force occurred or when the excessive force constituted a single blow that the bystanding officer could not have anticipated or stopped.  Id.; Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (finding that the District Court erred in denying qualified immunity because an officer did not commit a constitutional violation when he could not have anticipated or stopped another officer who punched a suspect one time in the stomach during an attempt to apprehend him).

Here, Plaintiff has failed to plausibly allege that Officer Martin had an opportunity to intervene to stop Waid when he allegedly violated the plaintiff's rights.  Plaintiff's complaint alleges "Twomey was quietly standing with his arms crossed when Defendant Waid shoved Twomey slamming his head against a concrete wall."  This description of the incident describes an abrupt, unprovoked, single application of force.  There are no facts pleaded indicating that the incident could have been anticipated by another officer.  Accordingly, this alleged incident falls directly within the precedent of Hadley and fails to raise the right to relief above a speculative level. The plaintiff has failed to present any facts that show that Martin could have anticipated or stopped the alleged incident or that he failed

to take reasonable steps to protect the plaintiff.  Accordingly, the motion to dismiss on the failure-to-intervene claim against Martin is due to be granted.

Plaintiff also asserts that Martin falsified a police report to cover up the allegedly excessive force.  Plaintiff seems to assert liability for this same action both under 42 U.S.C. § 1983 excessive force and later in the brief as a civil conspiracy.[6]  Plaintiff is correct that Section 1983 is the remedial vehicle for a conspiracy under Section 1985 to deprive a person of civil rights; however, it is actionable as a conspiracy, not as an application of excessive force.  Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).  Accordingly, the rest of the analysis will refer to this claim as a conspiracy under Section 1985 for clarity.

Martin alleges that the Second Amended Complaint is due to be dismissed because plaintiff failed to plead an underlying violation of § 1983 and because the plaintiff failed to plead sufficient facts to create a plausible inference of liability as to Martin.  To plead a conspiracy under § 1985 brought pursuant to § 1983 a plaintiff must show that the defendants denied him a constitutional right and that

---

[6] In the response to the motion to dismiss, the plaintiff alleges that this conspiracy was pursuant to 42 U.S.C. § 1985.  Defendants counter on reply that Section 1985 is not pleaded in the Second Amended Complaint. However, on the whole, the allegations in the Second Amended Complaint provided the defendants with notice that the plaintiff was alleging a federal civil conspiracy.

Additionally, the Plaintiff does not state which defendants he claims are liable for civil conspiracy. The factual allegations in the complaint reference the conduct of Martin and Waid and alleged that they conspired to deprive his federally protected rights. Additionally, the response brief appears to argue only in support of excessive force claims against the City. Accordingly, the court will address the civil conspiracy claim only in the context of Martin.

the defendants agreed to deny the plaintiff's rights. <u>Hadley</u>, 526 F.3d 1332. Here, plaintiff has failed to plead the required constitutional violation.

The complaint alleges that, after Waid applied excessive force to Twomey by shoving him into a wall, Martin created a false report that stated that Twomey "became uncooperative, slipped, fell, and injured his face." The plaintiff alleges, shotgun-pleading style, that these actions violate "rights secured by Article IV's Privileges and Immunities Clause, First Amendment, Fifth Amendment, and Fourteenth Amendment." However, the plaintiff never states what right was violated. While the court can opine a few rights which plaintiff could have asserted were violated and plaintiff attempts to assert one in his response brief, the complaint on its face is deficient. The complaint fails to state with specificity the right that he believes was violated and instead rests on his laundry list of potential rights. This is simply not sufficient. <u>Hadley</u>, 526 F.3d at 1332-3 ("[Plaintiff] has the burden to show an actual denial of his constitutional rights underlying the cover-up conspiracy. It is not our job to divine a constitutional violation to support Hadley's conspiracy claim. We are left completely in the dark about the constitutional basis for the claim. His complaint contains no explanation of which rights protected by the Fourteenth Amendment were infringed."). Accordingly, the motion to dismiss Plaintiff's civil conspiracy claim is due to be granted.

B. <u>City of Tuscaloosa</u>

The City argues that the claims against it in the plaintiff's Second Amended Complaint are due to be dismissed because any failures of policy or failure to adequately train Waid would have to rise to the level of deliberate indifference by his employer, the Tuscaloosa County Sheriff's Office, and Sheriff Ron Abernathy. The City contends that the Second Amended Complaint fails to establish that the City, which neither employed nor controlled Waid, the jailer who allegedly used excessive force against Twomey, exercised any policy or training responsibilities over Waid. In response, the plaintiff alleges that the policy at issue is the City's policy of housing inmates at the county jail despite knowledge that the jailers are untrained and use excessive force against detainees. The plaintiff further alleges that, by housing inmates in the county jail, the City has effectively adopted the policy of the County and Sheriff Abernathy of employing persons who are deficiently trained and have an alleged history of excessive force. Plaintiff cites no authority for the assertion that the allegedly deficient policy of one police department can be attributed to another because the two departments share a jail.

To be actionable under § 1983, the failure to train police officers must rise to the level of "deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Municipal liability under Section 1983, which

must be based on the municipality's custom or policy, arises only where the failure to adequately train officers is a made by a deliberate or conscious choice.  Id. at 389.  Additionally, the potential liability of municipalities is limited because there must be an affirmative causal link between the deficient policy and the constitutional deprivation.  Id. at 385; City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d. 791 (1985).

In Tuttle, a plaintiff brought suit against an officer and the city after her husband was shot and killed by the officer after a reported robbery-in-progress.  Id. at 811.  At trial the plaintiff called an expert witness who testified that the training program for police officers in the city was "grossly inadequate."  Id. at 812.  Plaintiff's theory of liability was essentially that "the 'policy' in question was the city's policy of training and supervising police officers, and that this 'policy' resulted in inadequate training, and the constitutional violations alleged."  Id. at 819.  The jury returned a verdict in favor of the plaintiff, and the Tenth Circuit affirmed.  The Supreme Court reversed on the grounds that the jury was improperly instructed that it could infer the existence of a deficient training program solely on the basis of one incident.  Id. at 822.  The Supreme Court clarified the mandate of Monell:

> [S]ome limitation must be placed on establishing municipal liability
> through policies that are not themselves unconstitutional, or the test
> set out in Monell will become a dead letter.  Obviously, if one retreats

far enough from a constitutional violation some municipal "policy" can be identified behind almost any such harm inflicted by a municipal official; for example, [the officer] would never have killed [plaintiff's decedent] if Oklahoma City did not have a "policy" of establishing a police force. But <u>Monell</u> must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was "caused" by the municipal "policy." At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.

<u>Id.</u> at 823.

The claims that the plaintiff has alleged against the City are well within the precedent of <u>Tuttle</u>. <u>See</u> 471 U.S. at 823. Plaintiff has alleged that the city's policy of housing inmates at the county jail is responsible for the harm that he suffered as a result of the alleged excessive force of Waid, who is employed by the county. However, the city's policy is not unconstitutional in and of itself. By this logic, the state liquor control board could be equally liable due to its policy of issuing liquor licenses to businesses in Tuscaloosa County where the plaintiff consumed alcohol and was taken to the jail where his rights were allegedly violated by Waid. The connection between the policy at issue and the alleged constitutional deprivation is simply too tenuous. The plaintiff alleges that Sheriff Abernathy has a policy of hiring untrained jailers and that this lack of training leads to an increase in the number of excessive-force incidents. The City's alleged policy, however, is one step removed from this. The plaintiff alleges in substance that the City's

policy is to house people arrested by the City's police force in the county jail, knowing that the jailers there are relatively untrained and more likely to engage in excessive force. This fails to establish the necessary causal link. It is the Sheriff's alleged policy of hiring untrained jailers that is the proximate cause of the potential for excessive force, not the City's use of the county jail. See <u>Tuttle</u>, 471 U.S. at 823. The City of Tuscaloosa's motion to dismiss Plaintiff's excessive force claim under § 1983 is due to be granted.

## C. <u>Negligence and/or Wantonness</u>

Martin and the City contend that Plaintiff's claim for negligence and/or wantonness is barred by Alabama's peace-officer immunity, <u>Alabama Code</u> § 6-5-338, which uses as its standard of analysis the Alabama state-agent immunity as established in <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000). The plaintiff replies only that Martin is not immune and, therefore, the City is not immune.

<u>Alabama Code</u> § 6-5-338(a) states in relevant part:

> Every peace officer… who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as a peace officer… by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers or tactical medics, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody

persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Because the statute express analogizes city and county peace officers to "officers of this state," the Alabama courts have construed the statue are applying state-agent immunity, as explicated in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), to local municipal police officers. See Ex parte City of Tuskegee, 932 So. 2d 895 (Ala. 2005).

Alabama's law of state-agent immunity was restructured in the case of Ex parte Cranman, 729 So. 2d 392 (Ala. 2000). Post-Cranman, the law now provides:

A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

(a) making administrative adjudications;

(b) allocating resources;

(c) negotiating contracts;

(d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not be immune* from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) *when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.*

Cranman, 729 So. 2d at 405 (emphasis added).

In the Second Amended Complaint, the plaintiff alleges that Martin "willfully, maliciously, and fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of the law" breach his legal duties to the plaintiff "when he failed to intervene [to prevent the use of excessive force by Waid] and prepared a false report" about the incident.  (Second Amended Complaint, Doc. 39,

¶ 65). In briefing, there is no dispute between the parties that Martin's use of force during an arrest and the preparation of a police report are the types of activities for which Martin would normally be immune; however, plaintiff has argued that immunity does not apply because Martin acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

Turning first to the claim that Martin failed to intervene to prevent or stop Waid's use of force, the court previously concluded above that the complaint alleges a sudden and unanticipated use of force that Martin had no meaningful opportunity to prevent or stop. It follows that Martin did not breach any legal duty to intervene when he had not reasonable opportunity to do so.[7] Accordingly, the negligence and wantonness claims against Martin and the City for failing to prevent or intervene in Waid's use of force against the plaintiff are due to be dismissed for failing to state an Alabama tort claim under the Twombly pleading standards.

The complaint further alleges that Martin breached a duty to prepare an accurate police report, causing Twomey damages.[8] At the outset, the court does

---

[7]  It is not clear to the court that Alabama tort law recognizes a duty on the part of police officers to intervene to prevent or stop excessive uses of force by other police officers. The court will assume, without deciding, that such a tort duty is recognized in Alabama law.

[8]  It is not clear what damages the plaintiff claims as a result of the allegedly false report by Officer Martin. There is no allegation in the complaint that the report was used as a basis for

not believe that Alabama tort law (as distinct from § 1983 federal law) recognizes such a "duty" to prepare an accurate police incident report that runs to the plaintiff. An actionable tort occurs when the defendant breaches a duty owed to the plaintiff. As a district court has explained:

> It is well settled that Alabama law requires that a plaintiff seeking to establish a right to recover for negligence must offer proof of the following elements: *a duty owed by defendant to plaintiff*, a breach of that duty, and an injury proximately caused by the breach. *See, Ranger Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 410 So. 2d 40, 41 (Ala. 1982); *Quillen v. Quillen*, 388 So. 2d 985, 988 (Ala. 1980). Clearly, a defendant will not be liable to an injured plaintiff unless the defendant owed a duty to the plaintiff and breached it in a way that caused the plaintiff's injury. "If there is no duty, there is no cause of action." *Alabama Power Co. v. Laney*, 428 So. 2d 21, 22 (Ala. 1983). *Accord, Sutton v. Mitchell Co.*, 534 So. 2d 289, 291 (Ala. 1988) (following *Laney* ).

Salter v. United States, 880 F. Supp. 1524, 1529–30 (M.D. Ala. 1995) (italics added).  The duty to prepare an accurate police or incident report is one imposed by Martin's employer as a function of his employment as a police office.  It is not a duty imposed by tort law, nor does it run to the plaintiff.  Persons who are not law enforcement officers have no general legal duty to prepare any kind of report, accurate or not, related to incidents they witness.  That Martin's employer imposes

---

arresting or prosecution of the plaintiff or that it defamed him in any way.  At most, he alleges that it was part of a *post hoc* effort to cover up the completed use of excessive force by Waid.

such a duty as part of Martin's employment does not create an actionable "duty" on which a tort claim can be made by someone not in the employment relationship.

Although the court has found no Alabama authority addressing this question, and the plaintiff has cited none, other states have concluded that the police duty to prepare investigative reports is not owed to a particular person or class of persons, but is a duty owed to the public generally. For example, the Court of Appeals of Maryland has held:

> Generally, under the public duty doctrine, when a statute or common law "imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort." Dan B. Dobbs, THE LAW OF TORTS § 271 (2000) (footnote omitted). As we explained in *Ashburn* [*v. Anne Arundel County*, 306 Md. 617, 628, 510 A.2d 1078, 1084 (1986)], the "duty owed by the police by virtue of their positions as officers is a duty to protect the public." *Ashburn*, at 628, 510 A.2d at 1084. Pursuant to the doctrine, therefore, police officers ordinarily may not be held liable for failure to protect specific persons because they owe no duty, as the first element of a negligence action requires, to those individuals.

Muthukumarana v. Montgomery County, 370 Md. 447, 486–87, 805 A.2d 372, 395 (2002). In King v. Arbic, 159 Mich. App. 452, 459, 406 N.W.2d 852, 855 (1987), the Michigan Court of Appeals held that a state trooper had no actionable duty owed to the plaintiff to write an incident report in a way that included certain exculpatory statements. The Washington Court of Appeals explained in a case where the plaintiff sued law enforcement officials for negligent investigation of a

child abuse charge, "the duty of police officers to investigate crimes is a duty owed to the public at large and is therefore not a proper basis for an individual's negligence claim." Rodriguez v. Perez, 99 Wash. App. 439, 443, 994 P.2d 874, 877 (2000). So too, the Alabama Supreme Court has recognized the common law "public duty doctrine," holding that a duty owed to the public at large is not a duty owed to any particular person. Absent a special relationship, the duties a police officer owes to the general public is not a duty owed to a specific person and cannot be the basis for a claim in damages. See Alabama Dep't of Corr. v. Thompson, 855 So. 2d 1016, 1025 (Ala. 2003) ("We agree with the Michigan Court of Appeals and the South Carolina Court of Appeals that state correctional officers owe a general duty to the public, not a duty to a specific person, to maintain custody of inmates.").

In this case, the plaintiff alleges that Officer Martin owed him a duty to prepare an accurate report concerning the incident with Jailer Waid. The court holds that Alabama law does not recognize such a duty in state tort law. The duty owed by a police officer to investigate and report potential violations of law accurately is a duty owed to the public at large, and not to a particular person or class of persons. Under the "public duty doctrine," such a duty cannot be the basis for tort liability because no duty existed in favor of the plaintiff making the claim. Consequently, in the absence of a duty owed to him, the plaintiff has not plausibly

alleged a negligence, wantonness, or intentional tort claim arising from the report written by Officer Martin. These claims under state law are due to be dismissed with prejudice.

D. Monell Liability: Negligent Hiring, Training, and Supervision & Inadequate Policy

The City also contends that Plaintiff's claims against it for negligent hiring, training, and supervision and for inadequate policy under a theory of liability pursuant to Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978) are due to be dismissed.

The Eleventh Circuit has summarized Monell liability as follows:

[I]t is by now well established that municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). This liability is premised on a constitutional violation carried out by the C[ity] itself and cannot be based on theories of respondeat superior or vicarious liability. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

To establish a c[i]ty's policy, a plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the c[i]ty shown through the repeated acts of a final policymaker for the c[i]ty." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). As we have recognized, "a c[i]ty rarely will have an officially-adopted policy of permitting a particular constitutional violation." Id. at 1330. Thus, most plaintiffs

"must show that the c[i]ty has a custom or practice of permitting [the violation] and that the c[i]ty's custom or practice is the moving force behind the constitutional violation." Id. (quotations and alteration omitted). Under either theory, a plaintiff must show that the c[i]ty "has authority and responsibility over the governmental function in issue" and must also "identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." Id.

Knight through Kerr v. Miami Dade Cty., 856 F.3d 795, 819 (11th Cir. 2017).

Here, Plaintiff's allegations against the City are simply deficient. The plaintiff has alleged that the City has a policy of housing inmates in the county jail and that the City has covered up excessive force incidents in the past. However, there are two more required elements that the plaintiff has failed to allege. Plaintiff has not alleged that the City's presumed agreement to house inmates in the County jail was "the moving force behind the constitutional violation." To skirt around this, the plaintiff instead has attempted to argue that the City's decision to house inmates in the jail worked as a *de facto* adoption of all of the county's policies, including one that allegedly permitted deficiently trained employees to process inmates. In briefing, the plaintiff has provided the court with no case law holding that liability can be established in this manner, and the court has found none. The complaint simply fails to allege that the purported negligence in hiring, training or retention and the allegedly deficient policy or training was caused by any City policy. Similarly, the plaintiff has failed to "identify those officials who speak with

final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." <u>Knight through Kerr</u>, 856 F.3d at 819. Accordingly, the motion to dismiss is due to be granted as to Counts 4 and 5.

## CONCLUSION

In accordance with the analysis above, the court finds that the defendants' motions to dismiss are due to be GRANTED IN PART and DENIED IN PART, as follows:

1. Plaintiff's claim against **Martin** in Counts One and Six for excessive force under 42 U.S.C. § 1983 and civil conspiracy under 42 U.S.C. § 1985 are due to be DISMISSED WITH PREJUDICE.

2. Plaintiff's claims against the **City** in Counts One, Four, and Five, for excessive force under 42 U.S.C. § 1983, negligent, hiring, training, and supervision, and inadequate policy under a theory of <u>Monell</u> liability are due to be DISMISSED WITH PREJUDICE.

3. Plaintiff's claims against both the **City and Martin** for negligence and/or wantonness under Alabama state law for failing to intervene to prevent or stop the use of excessive force by Waid and for failing to prepare an accurate incident report are due to be DISMISSED WITH PREJUDICE.

4.    Plaintiff's claim against **Sheriff Abernathy** for excessive force under 42 U.S.C. § 1983 in Count One is due to be DENIED.

5.    Plaintiff's claims against **Sheriff Abernathy** for negligence and/or wantonness under Alabama state law in Count Three are due to be DISMISSED WITH PREJUDICE, based on the Sheriff's absolute sovereign immunity under Section 14 of the Alabama Constitution.

6.  Plaintiff's claim against **Sheriff Abernathy** in Counts Four and Five for inadequate policy with respect to hiring and training in the jail under 42 U.S.C. § 1983 and Monell are due to be DENIED.

7.  Plaintiff's claim against **Sheriff Abernathy** for civil conspiracy under 42 U.S.C. § 1985 in Count Six is due to be DISMISSED WITH PREJUDICE for failure to state a claim.

The court will enter a separate order.

DONE this 30th Day of May, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE