FILED

2021 Mar-31  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JARED AUSTIN TWOMEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:18-cv-1653-GMB |
| | ) | |
| TYLER WAID, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are Motions for Summary Judgment (Docs. 68 & 69) filed by Defendants Tyler Waid and Ron Abernathy.  The defendants seek dismissal of Plaintiff Jared Austin Twomey's excessive force and related claims.  The motions have been fully briefed, and the court has considered the evidence and arguments set forth by all parties. Docs. 68, 69 & 76–81.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 22.  For the following reasons, the court finds that the motions are due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgement is to

separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## II.  FACTUAL BACKGROUND

Resolving all factual inferences in favor of Twomey, the nonmovant, the facts are as follows.

### A.    Twomey's Injuries

Twomey attended Texas A&M University from 2013 to 2018. Doc. 68-1 at 6

& 9.  On Saturday, October 22, 2016, he visited Tuscaloosa, Alabama for a football game between the University of Alabama and Texas A&M.[1]  Doc. 68-1 at 6. Twomey woke up on Saturday morning and attended the mid-day game. Doc. 68-1 at 6.  The next thing he remembers is waking up in the Tuscaloosa County Jail on Sunday morning. Doc. 68-1 at 6.  Given Twomey's "alcohol induced amnesia" (Doc. 68-1 at 11), the details of the events leading to his injuries come from other sources.

First, an arrest report from the Tuscaloosa Police Department describes how Twomey was arrested for public intoxication around 2:00 a.m. on Sunday, October 23. Doc. 76-5 at 2.  The arresting officers determined that Twomey was a danger to himself and others, so they arrested him and brought him to the jail. Doc. 76-5 at 3. Second, the deposition testimony of Tyler Waid, a detention officer working at the jail at the time of Twomey's arrest, supplies some additional information. Doc. 68-1 at 71 & 74.  Waid recalls that Twomey was arrested on October 23 and brought to the jail, where Waid began the booking process that eventually led to Twomey's injuries. Doc. 68-1 at 74–75.  However, Waid had little memory of that morning in 2016 by the time he was deposed in July 2020. Doc. 68-1 at 74.  Thus, the primary source of information in the record concerning the circumstances of Twomey's booking and injuries is a video recording from a camera in the jail that captured the

---

[1] The court takes judicial notice that the University of Alabama defeated Texas A&M by a score of 33 to 14.

entire encounter between Twomey and Waid. Doc. 76-1.

The video reflects that another officer first escorted Twomey into a secure room at the jail. Doc. 76-1 at 0:05–0:25. Waid entered this room and removed the contents of Twomey's pockets. Doc. 76-1 at 1:40–3:17. Waid next patted Twomey down. Doc. 76-1 at 3:20–3:32. Then the other officer removed Twomey's handcuffs. Doc. 76-1 at 3:33–3:55. Waid removed Twomey's wristwatch, his belt, and his ring. Doc. 76-1 at 4:05–5:23. After multiple commands from Waid, Twomey faced the wall and pulled off his boots with Waid's assistance. Doc. 76-1 at 5:28–6:30. Twomey then removed his socks at Waid's command. Doc. 76-1 at 6:33–7:13. After Waid examined the socks, he told Twomey that he could put them back on. Doc. 76-1 at 7:14–7:28. Twomey began to put his socks back on, but stopped and crossed his arms. Doc. 76-1 at 7:29–7:42. Waid then told Twomey to face the wall behind him. Doc. 76-1 at 7:43–7:46.

The video shows that Waid placed his hands on Twomey's arms and then clenched the back of his shirt. Doc. 76-1 at 7:45. And it is shows that Twomey's head hit the wall as he turned. Doc. 76-1 at 7:45–7:48. But the parties—watching the same video and without any independent knowledge of the events it depicts— offer divergent explanations for why Twomey's head hit the wall. According to Waid's counsel, the video shows that Waid ordered Twomey to face the wall and then physically turned Twomey to face the wall, but Twomey lost his balance as he

turned. Doc. 69 at 9–10.  Waid tried to keep Twomey from falling by clenching the back of his shirt and holding him against the wall, but his head struck the wall despite Waid's attempt to catch him.  Twomey's counsel, on the other hand, argues that the video establishes that Twomey had begun to turn toward the wall in response to Waid's command, but Waid grabbed him, spun him in a different direction, and shoved him into the wall. Doc. 78 at 4–6 & 17.  The jail's incident report indicates that "Twomey tripped over his feet hitting his head against the blue board on the wall." Doc. 76-4 at 2.  It is undisputed that Twomey suffered a laceration on his eyebrow that required stitches, along with a concussion that required multiple doctor's visits and continues to cause symptoms to date. Docs. 69-1 at 11–14, 76-2, 76-4 & 76-6.  Waid admits that Twomey was not aggressive during their encounter. Doc. 68-1 at 78.

## B.  Training and Grievance Process

At the time Waid began working at the jail, Sheriff Ron Abernathy required a two-week training class for all new hires. Doc. 68-1 at 45.  Waid was trained in various tasks including how to conduct a patdown, inventory property, and book an inmate. *See* Doc. 77-1.  Employees also received yearly training across a number of areas such as "Response to Resistance," "Inmate Rights & Responsibilities," "Handcuffing, Patdown & Defense Tactics," and "Supervision of Inmates." Docs. 68-1 at 45, 77-2 at 2 & 77-3 at 2.  Waid received a total of 12 weeks of training

during his employment at the jail. Doc. 68-1 at 88–89.

Rhett Hill, a supervisor at the jail, testified that any time an officer used force, either hands-on or with a tool such as pepper spray or a taser, that officer had to fill out a report. Doc. 76-3 at 5–7.  Waid confirmed that the proper procedure is to file an incident report with a supervisor after any incident when an inmate is injured. Doc. 68-1 at 72.  But the standard procedures did not require the supervisors to investigate every report they receive. Doc. 76-3 at 7.

Finally, the record reflects that jail the has a procedure by which inmates may file a grievance with one of the detention officers, who will then forward the grievance to a supervisor. Doc. 68-1 at 42.  For example, Sylvester Slay, an inmate at the jail, filed a grievance against Waid in March 2016. Doc. 77-5 at 7.  Slay wrote that "Officer Waid snatched my pad that I was sitting on from underneath me and it injured my back." Doc. 77-5 at 7.  Abernathy testified that this was not the type of incident that would require the officer to file a report. Doc. 68-1 at 42.  Slay ultimately filed a lawsuit bringing an excessive force claim against Waid, among other claims. *See* Doc. 77-5.  Abernathy first learned of Slay's grievance against Waid when he heard about the lawsuit. Doc. 68-1 at 42.  The court determined that Slay's claim against Waid was not frivolous (Doc. 77-6 at 3 & 7), but ultimately dismissed Slay's lawsuit for his failure to prosecute. Doc. 77-8 at 3.

# III.  DISCUSSION

All of Twomey's claims arise from the events surrounding his arrest and detention.  Against Waid, Twomey brings a claim of excessive force under 42 U.S.C. § 1983 and state-law claims of negligence and assault and battery.   Against Abernathy, Twomey brings § 1983 claims of excessive force, municipal liability, and negligent hiring, training, and supervision.

## A.    Claims Against Waid

### 1.    *Excessive Force*

Twomey claims that Waid violated his right to be free from excessive force by assaulting him. Doc. 39 at 7.  Waid argues that he is entitled to qualified immunity with respect to this claim. Doc. 69 at 7.   Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  These officials will be entitled to qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), and they were acting within their discretionary authority. *Lee*, 284 F.3d at 1194.  Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the

earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted).

To receive qualified immunity, a public official first must prove she was acting within the scope of her discretionary authority when the relevant events occurred. *Lee*, 284 F.3d at 1194.  Discretionary authority encompasses those acts that fall within an employee's job responsibilities. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  "The acts of processing and detaining an arrestee qualify as discretionary functions of law enforcement officers." *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007).  Here, Waid was processing Twomey for detention throughout their interaction. *See* Doc. 68-1 at 74–75.  Therefore, the court finds that Waid was acting within his discretionary authority at this time.

"The burden then shifts to [Twomey] to show that qualified immunity should not apply because: (1) [Waid] violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted).  "When, as here, qualified immunity is asserted in the context of a motion for summary judgment, we look at the evidence

in the record, interpreted in the light most favorable to the plaintiff.  Based on this evidence, we must determine if there is a reasonable dispute of material fact over whether the defendant violated the plaintiff's clearly established constitutional rights." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

"We have repeatedly ruled that a police officer . . . is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (holding that a plaintiff stated a claim for excessive force after an officer slammed his head against the pavement while he lay prone and handcuffed on the ground).  For example, in *Lee*, 284 F.3d at 1191, an officer pulled the plaintiff out of her car and handcuffed her.  According to the plaintiff, the officer then slammed her head down onto the trunk of her car. *Id.*  The court held that the officer's use of force was excessive given that the plaintiff had already been handcuffed and posed no threat or risk of flight. *Id.* at 1198.

Here, Twomey was in a secure room in the jail under the supervision of multiple officers when he was injured.  As Waid admits, Twomey was never aggressive and attempted to comply when commanded to turn and face the wall.  Doc. 68-1 at 76 & 78.  Therefore, the evidence indicates that Twomey was arrested, secured, and posed no threat or risk of flight at the time he was injured.  However, neither Waid nor Twomey has an intact memory of that morning, and the video does

not conclusively show whether Waid applied unreasonable force and caused Twomey to hit his head against the wall. A reasonable jury viewing the video may see an officer supporting a stumbling, intoxicated detainee and either failing to prevent an injury despite his best efforts, or inadvertently causing one. But it would not be unreasonable for a jury watching the same video to conclude that Waid lost his patience with Twomey and shoved his head against the wall without cause. Thus, construed in the light most favorable to Twomey, there is a factual dispute as to whether Waid intentionally caused Twomey's injuries when there was no threat to Waid or risk of flight. Therefore, the court finds that Waid is not entitled to qualified immunity at this stage of the proceedings, and his motion for summary judgment as to the excessive force claim is due to be denied.[2]

### 2.    *Assault and Battery*

Under Alabama law,

> [t]he elements of assault and battery are an intentional, unlawful offer to touch the person of another in [a] rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented. A battery is a successful assault and requires a touching in a hostile manner.

*Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1259 (M.D. Ala. 2010) (internal

---

[2] Both parties argue that Twomey also must show that Waid intended to harm him. Docs. 69 at 10 & 78 at 21. However, "a pretrial detainee raising a Fourteenth Amendment claim needn't prove an officer's subjective intent to harm but instead need show only that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Piazza v. Jefferson County*, 923 F.3d 947, 952 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

citations and quotation marks omitted).

> Alabama law provides immunity for certain actions of state agents.
>
> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . . .

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  The Alabama Supreme Court later refined the scope of state-agent immunity to cover officials "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6–5–338(a), Ala. Code 1975." *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) (emphasis omitted).  "A State agent asserting State-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." *Ex parte City of Montgomery*, 99 So. 3d 282, 293 (Ala. 2012) (internal quotation marks and citations omitted).

To assert state-agent immunity, Waid relies only on *House v. State*, 380 So. 2d 940, 941 (Ala. 1979), for the proposition that anyone who is a "jail guard, warden or correction officer" is considered a "peace officer or law enforcement officer." Doc. 81 at 6–7.  However, *House* classified correctional officers as law enforcement

officers in the context of a statute prohibiting the assault of a law enforcement officer. *House*, 380 So. 2d at 941.  And since *House* was decided, the Alabama Supreme Court has clarified that immunity does not extend to "a municipal jailer who lacks the authority of a police officer." *Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010).  Waid has provided no evidence that he had the authority granted to a police officer while he worked at the jail.  Therefore, he has not met his burden to show his entitlement to state-agent immunity.

Moreover, for the reasons already discussed, when taken in the light most favorable to Twomey the evidence shows that Waid forcefully touched him in a way that injured him.  Therefore, the court finds that Waid's motion for summary judgment as to the assault and battery claim is due to be denied.

### 3.   *Negligence*

Twomey alleges that Waid negligently breached his duty to process him without injuring him. Doc. 39 at 15–16.  "Prison officials have a duty to exercise ordinary and reasonable care for the protection of persons in their custody." *Patton v. Thompson*, 958 So. 2d 303, 310 (Ala. 2006).  As discussed above, Waid does not enjoy state-agent immunity for his conduct. *See supra* Part III.A.2.  Viewed in the light most favorable to Twomey, the evidence shows that Waid breached his duty of reasonable care to Twomey by at least negligently using force against him and causing his injuries.  For these reasons, Waid's motion for summary judgment as to

the negligence claim is due to be denied.

**B.     Claims Against Abernathy**

*1.     Excessive Force*

Twomey brings a § 1983 excessive force claim against Sheriff Abernathy, arguing that he was deliberately indifferent to the inadequate training provided to the detention officers he employed and that this deliberate indifference caused Twomey's injury. Doc. 79 at 15.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of County Comm'r of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).  However, "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* (quoting *Bryan County*, 520 U.S. at 409).  In *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989), the United States Supreme Court hypothesized a single incident that would constitute deliberate indifference.  In that scenario, city policymakers decided to arm their police officers with firearms knowing that the officers would need to arrest fleeing felons, but did not offer them any training on the constitutional limitations for the use of deadly force. *Id.*  According to the Supreme Court, the need for this training is so obvious that the city's one-time failure to train would constitute deliberate indifference to the constitutional rights of fleeing felons. *Id.*

14

Twomey fails to establish that Abernathy was deliberately indifferent to his rights. Instead of trying to show a pattern of prior constitutional violations, Twomey argues that his injury falls under *Canton*'s single-incident theory of liability. Doc. 79 at 18. As Twomey points out, Waid received only eight days of training on booking procedures and no training on the handling of intoxicated inmates. However, Twomey provides no authority for a finding of deliberate indifference on these facts. The reason for this is simple. Despite the Supreme Court's *dicta* in *Canton*, neither it nor the Eleventh Circuit has ever found liability under a single-incident theory. *Vielma v. Gruler*, 808 F. App'x 872, 883 (11th Cir. 2020). The facts of Twomey's injury do not justify such a novel finding. Unlike in the *Canton* scenario, there is no lethal force at issue here. There is far less of a possibility that a lack of training in the booking context would lead to constitutional violations than if policymakers were to deploy armed and untrained police officers to chase fleeing felons. And unlike those policymakers, Abernathy did provide training to his officers. Doc. 68-1 at 45 & 88–89; Doc. 77-2 at 2; Doc. 77-3 at 2. The evidence shows that Waid received training in booking, including proper patdown procedures. Doc. 77-1. Twomey's argument that Waid should have been specifically trained in how to handle an intoxicated inmate does not identify a training deficiency so "obvious in the abstract" as to support a claim for deliberate indifference without proof of a pattern of similar incidents. *See, e.g.*, *Gold v. City of Miami*, 151 F.3d

1346, 1352 (11th Cir. 1998) (holding that lack of training "regarding the disorderly conduct statute and the proper response to handcuff complaints" are possible imperfections that nevertheless do not create single-incident liability under *Canton*). For these reasons, Abernathy's motion for summary judgment on the excessive force claim is due to be granted.

### 2.    *Municipal Liability*

A sheriff is exposed to civil liability when "the existence of an improper policy or . . . the absence of a policy" leads to a violation of constitutional rights. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).  "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62 (internal citations and quotation marks omitted).

This court denied Abernathy's motion to dismiss this claim because Twomey alleged that Abernathy engaged in a pattern or practice of permitting, encouraging, and ratifying known instances of excessive force. Doc. 48 at 10.  However, Twomey has not come forward with evidence that Abernathy knew of a series of prior instances of excessive force and failed to address them.  Twomey points to only one previous allegation of excessive force made by Sylvester Slay—an allegation that

was never proven. Doc. 79 at 20–21.  One unsubstantiated claim does not make a pattern.  Thus, Twomey has not proven that Abernathy engaged in a pattern of knowingly permitting excessive force in the jail, and Abernathy's motion for summary judgment regarding the claim of municipal liability is due to be granted.

### 3. *Negligent Hiring, Training, and Supervision*

Twomey alleges that Abernathy negligently hired, trained, and supervised the detention officers working at the jail. Doc. 39 at 18.  In his brief, Twomey relies on *Schuler v. Ingram & Associates*, 710 F. Supp. 2d 1213 (N.D. Ala. 2010), for the elements of a negligent hiring claim.  *Schuler* is not a § 1983 case and the negligent hiring claim in that case was based on state-law principles.  This court has already noted that Twomey's Second Amended Complaint framed the negligent hiring claim as a § 1983 claim. Doc. 48 at 11.  Otherwise, Abernathy would be immune. Doc. 48 at 10–12.  Even under § 1983, this claim fails.  Unlike the state-law claim discussed in *Schuler*, a negligent hiring, training, and supervision claim brought under § 1983 requires a showing of deliberate indifference. Doc. 48 at 11 (citing *Keith v. DeKalb County*, 749 F.3d 1034, 1052 (11th Cir. 2014)).  As discussed above, Twomey has not shown deliberate indifference by marshaling evidence of prior violations of constitutional rights or conduct that meets the test for single-incident theory of liability.  Therefore, the court finds that Abernathy's motion for summary judgment is due to be granted on the negligent hiring, training, and supervision claim.

## IV.  CONCLUSION

For these reasons, it is ORDERED that Defendant Abernathy's motion for summary judgment (Doc. 68) is GRANTED, and all of Plaintiff's claims against Abernathy are DISMISSED WITH PREJUDICE.

It is further ORDERED that Defendant Waid's motion for summary judgment (Doc. 69) is DENIED.

DONE and ORDERED on March 31, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE